[Crim. No. 3453.   First Dist., Div. One.   May 1, 1958.]

THE PEOPLE, Respondent, v. GILBERT R. CARROLL et al., Appellants.

Lawrence W. Welch, Jr., for Appellants.

Edmund G. Brown, Attorney General, Doris H. Maier, and J. M. Sanderson, Deputy Attorneys General, for Respondent.

PETERS, P. J.—Carroll and Ault were charged with the grand theft of an automobile belonging to Mary Flores, with taking the vehicle without the consent of the owner, and with certain priors. They admitted the priors, but pleaded not guilty to the two charged offenses. They were found guilty of the grand theft charge and not guilty of taking the vehicle without the consent of the owner. From the judgment entered on this verdict they appeal.

The car was stolen in San Francisco between the hours of 6:30 p. m. on May 6, 1957, and 7:30 a. m. on May 7, 1957, from a lot adjoining the home of its owner, Mary Flores. The automobile was a 1953 Oldsmobile sedan with a California license. When parked, the ignition was locked, and the registration slip was on the steering post. The car was found in the possession of the two defendants at 3 a. m. on May 8, 1957, when they were stopped by an officer in the town of San Pablo. Carroll was driving. The officer noted that there was no registration certificate visible and that there was no key in the ignition. Carroll was asked for his driver's license but stated that he did not have one, and also told the officer that the car belonged to a cousin in Richmond. Ault corroborated Carroll. The officer issued Carroll a citation for failure to have a driver's license, and checked the license number by radio. He discovered that the license number then on the car was registered to a 1937 Chevrolet from Port Chicago. Carroll and Ault both told the officer that they had been in Port Chicago that night. The officer then inspected the car. He discovered that the ignition had been cross-wired, and that the registration slip for the Oldsmobile in the name of Mary Flores was in the glove compartment. The back seat of the car had been torn out and a tire iron was found on the front floor boards. The trunk was dented in such a fashion that it indicated someone had tried to pry it open. The officer questioned defendants about the cross-wiring of the ignition. Then both defendants admitted that they had lied about the car belonging to Carroll's Richmond cousin. They both stated that early on the evening of May 7, 1957, they were loaned the

car by a man in a bar in San Francisco. Later in the day the two defendants were separately questioned about this story. Carroll stated that this unidentified man was a 6-foot blond in his early twenties. Ault described him as a heavily built little fellow with black hair. When confronted with these different descriptions defendants refused further to discuss the matter.

At the trial Carroll testified that he met Ault at about 3 p. m. on May 7, 1957, and that they finally landed in a bar on either 3rd or 5th Street in San Francisco sometime after 7 p. m. There they met a stranger whose first name was Floyd, last name unknown. He was between 5½ and 6 feet tall, and his hair was darker than blond. They talked for a while, and defendants told Floyd that they were going to borrow a car to drive to Port Chicago. Carroll testified that Floyd generously offered to lend them his car on their promise to bring it back by 2 p. m. of the next day. Carroll did not pay Floyd a deposit nor did he even give him his name and address. They told Floyd that they wanted to go to Port Chicago to see if Ault could find his children who were living there with his estranged wife.

Floyd brought the Oldsmobile to the bar. When Carroll commented on the fact that the ignition had been cross-wired Floyd explained that his wife, who drank to excess, had the key. Neither appellant noticed the condition of the back seat, saw the tire iron, nor did they observe the lack of a registration certificate. Carroll and Ault both denied having the conversation with the officer in which they described, differently, the man who loaned them the car.

Both defendants tried to account for their time during the hours in which the vehicle was stolen. Carroll testified that he was out alone walking a dog between 6:30 and 11 p. m. on May 6, 1957, and was home in bed thereafter until the next morning. Carroll's mother, stepfather and stepbrother testified that Carroll was home after 11 p. m. Ault testified that he was home entertaining some friends until nearly midnight on May 6, 1957, and then retired.

The appellants do not challenge the sufficiency of the evidence. They contend that it was prejudicial to deny their request for a recess during the trial, and Ault contends that it was prejudicial error to deny his request for a continuance to procure the presence of several witnesses. Neither contention has merit.

■ While the arresting officer was testifying, appellants requested a recess so that their counsel could review the

officer's testimony at the preliminary to ascertain whether it was inconsistent with his testimony at the trial. The record shows that before appellants' counsel commenced his cross-examination of the officer he requested a five-minute recess for the purpose indicated, but the record does not show that the request was denied. The record shows that when the request was made the trial judge stated: "You go ahead and review it. Read it right now. We will wait." Far from indicating that counsel was deprived of any opportunity to study the transcript, the record affirmatively shows that time was given to him for this very purpose.

Appellants also complain that they did not have an opportunity to consult with their counsel after the officer had testified about the differing descriptions given by appellants of the man who had supposedly loaned them the car. The record does not disclose any request for a recess or for time for such a purpose.

The next major contention of appellants is that error was committed in denying appellant Ault's request for a continuance made when he was called as a witness on his own behalf. At that time he asked for a continuance to secure the presence of his mother and brother who, it is contended, would have verified Ault's presence at home on the night of May 6, 1957. The appellant told the court that these two witnesses had to go to the bedside of a dying sister and that he had had "no chance whatsoever to secure their presence since then." The trial court denied the request.

The denial was not erroneous, but was well within the discretion of the court. The record shows that the case was first set for trial on July 16, 1957. Thereafter three continuances, until July 26th, until August 12th and finally until August 22nd, were granted so that Ault could secure the presence of these witnesses. The court was thus quite liberal to Ault in granting continuances. It should also be pointed out that Ault testified that he was entertaining three friends until nearly midnight on May 6th, and that none of these supposed visitors was called.

A motion for a continuance is, of course, addressed to the sound discretion of the trial court. (*People* v. *Northcott*, 209 Cal. 639 [289 P. 634, 70 A.L.R. 806] ; *People* v. *Wade*, 118 Cal. 672 [50 P. 841].) There must be a showing that the testimony of the absent witness would be material, that diligence has been exercised in an attempt to procure his attendance (*People* v. *Sherman*, 139 Cal.App.2d 429 [293

P.2d 809]), and that his attendance can be secured within a reasonable time. (*People* v. *Wade,* 118 Cal. 672 [50 P. 841]; *People* v. *Sanders,* 114 Cal. 216 [46 P. 153].) ▉ Here the proper showing was not made. Appellants' brief refers to an affidavit supposedly dated the day of the trial in which a showing on some of these points was purportedly made. This affidavit was not made a part of the record on appeal and so may not be considered by us. (*People* v. *Villarico,* 140 Cal.App.2d 233 [295 P.2d 76]; *People* v. *Ashcraft,* 138 Cal. App.2d 820 [292 P.2d 676].)

Thus, not only was there not a proper showing made that would have required a continuance, but the record affirmatively shows that ample time was granted to Ault to secure the presence of these witnesses, and that there were at least three other persons who could have testified where Ault was on the night of May 6th.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.