[Crim. No. 7396. Second Dist., Div. Two. Apr. 26, 1961.]

THE PEOPLE, Respondent, v. ROBERT LEE PETERS et al., Defendants; JAMES S. McCAW, Appellant.

Katz & Duncan and Elinor Chandler Katz for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Matthew M. Kearney, Deputy Attorneys General, for Respondent.

HERNDON, J.—Appellant McCaw together with defendants Peters and Small was charged with burglary and grand theft in that on or about March 8, 1960, they wilfully entered the J. C. Penney Building in Santa Monica with intent feloniously to commit theft and that they wilfully and unlawfully took therefrom men's suits of the value of $900. Appellant

was also charged with three prior burglary convictions. All three defendants pleaded not guilty to each count. Appellant first denied, but in chambers prior to the commencement of the trial, he admitted the prior convictions for which he served prison terms in California.

In the ensuing jury trial, all the defendants were found guilty of burglary in the second degree and of grand theft. Appellant did not take the stand to testify in his own behalf. It is from the judgment of conviction that appellant, then in propria persona, gave the following notice: "Written notice of appeal is hereby given from the order and judgment in the above entitled court rendered April 12, 1960 by Judge Lynch, Department A, Santa Monica. Said appeal is taken upon all motions, judgment and orders therein." The appellant retained counsel for his appeal and the opening brief indicates only an appeal from the judgment itself. ██ In any event, it is clear that an appeal from the trial court's denial of the appellant's motion for a continuance is a non-appealable order (3 Cal.Jur.2d, Appeal and Error, § 51), and we must assume that it is from the judgment alone that appellant McCaw takes this appeal. He alleges error (1) in the extensive cross-examination of his codefendant Small by the court, and (2) in the denial of his motion for a continuance to produce an additional witness.

The factual background surrounding this prosecution is not in dispute with the exception of the identification of defendant Peters and the appellant. On March 8, 1960, at approximately 4 p. m., while working as a stock clerk in the J. C. Penney store in Santa Monica, Henry McGraw observed a 1953 Oldsmobile facing the wrong way in the alley next to the store. McGraw testified that defendant Peters was alone in the car behind the wheel. When he reentered the store, McGraw observed defendant Small and the appellant approximately 3 feet away coming out of the store with Small carrying six or eight men's suits. McGraw yelled to the store manager Ken Noble that "somebody is getting some of your suits." McGraw then observed Small and the appellant run to and enter the car. The record indicates that witness McGraw was positive in his identification of the three defendants and, in spite of vigorous cross-examination, remained firm in his testimony.

Noble testified that upon hearing McGraw's call, he ran out the rear door and observed a white Oldsmobile with two

men in the front seat and one man entering the rear. He attempted to wave them to a stop but they "took off very fast." Noble noted that the license number was NUK 717, and subsequently he gave the police this license number.

Officer Richard Brown of the Compton Police Department testified that he received information regarding the 1953 Oldsmobile, license number NUK 717, and the address of the registered owner which was 522 West Peach Street, Compton. Officer Brown related that he arrived at that address at approximately 5:10 p. m., observed the white Oldsmobile, license number NUK 717, backed in the driveway, and then saw three men enter the car from the house and drive away. He followed the car for seven blocks and then pulled it over, informed the occupants that he was a police officer and requested them to exit from their car. He observed defendant Peters driving, with defendant Small in the right front seat and appellant in the rear seat beside a stack of 25 men's suits with J. C. Penney pricing tags on them.

Officer Brown further testified that the three men got out of the car and that while they were being turned around and placed against the police car for searching purposes, he overheard Small tell Peters to the effect that he would bet that the boy at the store turned them in. Brown did not observe Peters reply to this statement. Small admitted to Officer Brown that he had entered the J. C. Penney Store and had taken the suits, but he stated that the two men who had been with him were not the appellant and Peters, and that he had been using and caring for Peters' car and house while Peters had been in San Francisco.

Officer Keith Ethell testified that on the same day he had had a conversation with Small in the presence of the appellant and Peters during which Small repeated what he had said to Officer Brown and added that he, Small, had met two acquaintances, "Harry" and "Bill," who had accompanied him to the J. C. Penney Store while he alone removed the suits, that he then dropped "Harry" and "Bill" off in Los Angeles, and that he thereafter observed the appellant hitch-hiking on Central Avenue, recognized him and picked him up. Small told the officer that he and the appellant then proceeded to Peters' house in Compton because Peters was due home from San Francisco and that he wanted to return the Oldsmobile to him. Small said that Peters was driving them back to Los Angeles when they were apprehended.

Appellant's defense is predicated on Small's story that "Harry" and "Bill," and not the appellant and Peters, were with him when he committed the felonies. Small testified for the defense and told substantially the same story as he had given to the police officers. He related that he had been left in charge of the Peters' car, house and dog because Peters and his wife were going to San Francisco with Small's nephew Zebbie T. Charles, and Mrs. Charles, and that he became acquainted with Peters through his nephew. The court cross-examined the defendant Small concerning the persons who went to San Francisco, their date of departure and return, the extent of Small's relationship to and knowledge of Peters.

It is contended that Small's credibility and veracity were seriously challenged by the court's cross-examination and this tended to raise the inference that Small's story exonerating the appellant was a fabrication. There is nothing in the record to indicate that counsel for the appellant ever objected to the court's cross-examination. ■ The right of a trial judge to examine witnesses cannot be disputed. (*People* v. *Corrigan,* 48 Cal.2d 551, 555 [310 P.2d 953].) ■ And, it is also well settled that "a judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred." (*Id.* at p. 556.)

After the court's cross-examination of Small, defendant Peters' wife testified substantially to the same effect as had Small regarding the San Francisco trip; and, further, that she and her husband returned to Los Angeles the day before the burglary. Peters himself testified concerning the trip to San Francisco with the Charleses and his narration was approximately the same as that given by Small and his wife. An additional witness, one McMillan, testified that Peters worked with him throughout the day of the burglary.

During the trial, the defense requested and was given a continuance for the purpose of securing the testimony of Mr. and Mrs. Charles concerning the facts of the San Francisco trip and of their relationship to defendant Small. Defendants' counsel reported the next day that Mr. Charles refused to appear though subpoenaed, and requested a further continuance to enable the defense to compel the witness to appear. The court denied this request and it is this ruling that appellant charges is error.

We cannot agree that this denial of a continuance was prejudicial error. ■ "A motion for a continuance is, of course, addressed to the sound discretion of the trial court. [Citations.] ■ There must be a showing that the testimony of the absent witness would be material, [and] that diligence has been exercised in an attempt to procure his attendance." (*People* v. *Carroll*, 160 Cal.App.2d 6, 9 [324 P.2d 713].) The proposed testimony must be more than cumulative in nature; and "it must appear that the facts to be established cannot otherwise be proved." (12 Cal.Jur.2d, Continuance, § 34; *People* v. *Collins*, 195 Cal. 325, 333 [233 P. 97]; *People* v. *Sherman*, 139 Cal.App.2d 429, 432 [293 P.2d 809].)

■ The proposed testimony would have related only to defendant Peters' San Francisco trip, and would have been only cumulative in this regard since facts of the trip had already been testified to by Small, Mrs. Peters and Peters. The testimony would have in no way established appellant's innocence; and, in fact, does not even supply Peters with an alibi, since he admits returning from San Francisco the day before the burglary. Appellant agrees that Charles' testimony would not have related at all to the alibi Small gave for the appellant. At best it would only have tended to rehabilitate Small's veracity. This "rehabilitation" was accomplished by the testimony of defendant Peters, Peters' wife and McMillan. The proposed testimony of Charles would have been only cumulative in this rehabilitative sense as well and the rule of *People* v. *Collins, supra,* applies.

It is additionally noted that the original continuance was granted to obtain the testimony of either Mr. or Mrs. Charles. Presumably, Mrs. Charles could have provided the desired testimony regarding the San Francisco trip. ■ Appellant apparently did not attempt to secure her presence. Failure to do so indicated a lack of due diligence. (*People* v. *Carroll, supra,* 160 Cal.App.2d 6, 9; *People* v. *Rios,* 172 Cal.App.2d 623, 628 [342 P.2d 317].) The refusal to grant an additional continuance was not, under all the above circumstances, an abuse of discretion.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied May 12, 1961.