[Crim. No. 76. Fifth Dist. Dec. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EMMETT FERNANDEZ, Defendant and Appellant.

Samuel K. Brantley, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant appeals from a burglary conviction. With one Luis Miramontes, he was arrested by a police officer of the City of Merced in the early morning of October 24, 1962, inside the Club Morelos; the building had been entered through a torn screen and a broken window; the cash register had been opened and the cigarette vending machine had been pried apart and the money contents appropriated. In the course of the arrest, appellant was shot in the stomach by the officer and was hospitalized in the Merced County General Hospital. His mental condition there became such as to cause his admission on November 21, 1962, to the Modesto State Hospital where he remained until December 5, 1962. A preliminary examination was held on December 17, and completed on December 28, and the information was filed on January 4, 1963. On January 7, appellant was arraigned in the superior court on the charge of burglary, and he was advised that he was entitled to the services of the public defender. But he elected to represent himself and moved for a dismissal of the charges against him. In due course, the motion was denied, and he entered a plea of not guilty and requested a jury trial.

On February 8, 1963, the case was tried before a jury after the court had again offered counsel to the defendant and he again stated that he desired to represent himself. The trial was completed February 11, 1963, and the jury returned a verdict of guilty as charged. The case was referred to the probation officer, who recommended against a prison term and suggested that the defendant be sent to Vacaville facilities for treatment. The court, however, denied probation and sentenced the appellant to state's prison.

A brief summary of the facts developed by the evidence follows:

Frederick Harold Aulwurm, a police officer of the City of Merced, at about 4:34 a.m. on the morning of October 24, found that one of the windows at the rear of the Club Morelos on 11th Street, from which the glass had been broken for some time, but in which the screen had been intact, no longer appeared in the same condition; the screen had been torn out. The officer called the police station on the radio, and gave notification that there was a possible burglary; he

then made a closer inspection, checked the rear door, which was locked, found that the front door was also locked, and then heard some kind of "metallic noise" inside the club. He returned to the rear door, heard a key being placed in the lock from the inside, stepped back, drew his revolver and waited. As the door slowly opened, he grabbed it and pulled it wide open; two men were standing inside; one of the men was the appellant; they started to run back along a hall in the club building; the officer called to them to halt; he fired a warning shot and ran after them; he testified that he saw defendant with a tire tool in his hand in a threatening position and from a distance of 3 to 10 feet shot him; the officer turned and covered the other man, Miramontes, who surrendered. The officer determined that the cigarette machine had been broken into. The money box from the machine lay on the floor beside appellant.

In an extrajudicial statement made to officers against the advice of an attorney, appellant admitted that he cut open the window screen and that he and his friend entered the building with intent to steal any money they could find, and that he had forced open the money box of the cigarette machine with a tire iron. He said that he opened the back door, saw the officer standing there, closed the door, threw down the money box and tire iron in the other room, and raised his arms in complete surrender before he was shot by the officer.

Appellant did not take the stand at the trial; he examined several character witnesses in his behalf; he objected to the reading of the extrajudicial statement on the ground that the statement had been made involuntarily.

Appellant in propria persona filed a notice of appeal from the judgment; this court appointed counsel to represent him upon request. Appellant argues that the judgment should be reversed because of four categories of alleged errors, which are: (1) errors in admitting or excluding evidence; (2) errors in instructions; (3) error in refusing to compel attendance and testimony of witnesses; (4) error in verdict and judgment.

Appellant's first claim is that the court erred in refusing to permit the introduction in evidence of the blood-stained clothing worn by him at the time he was shot. Defendant made this offer of proof, so he says, to show that there were no powder burns on the clothing, leading to the inference that he was farther from the officer who shot him than the 3 feet first testified to at the trial by the policeman.

The court sustained the objection as not being material to the issue. Defendant explained that he would like to impeach the officer, but the court answered that it was only on a collateral matter and whether the policeman was 3 or 10 feet from him was immaterial, that defendant was being tried for entering the Club Morelos by breaking in with the intention of committing theft, and that the bloody clothes would have no bearing on this.

If the jury had been called upon to pass on the question whether the tire iron was a deadly weapon (Pen. Code, § 460, subd. 1), the evidence would have been apropos. But the error was harmless in that, for reasons hereinafter stated, the degree of the crime was of the second degree.

■ The court refused to permit Pearlie Mae Madkins, a vocational nurse at Merced County General Hospital, to testify with regard to giving narcotics to the defendant before he made the confession which had been introduced in evidence. The court stated that that would not be "the best evidence. The best evidence would be the hospital records." The court was clearly in error in this matter and should have permitted the testimony. However, defendant made no offer of proof after the erroneous ruling, and it may well be that the witness would not have testified differently from the hospital record, which was later placed in evidence; we cannot surmise that she would have enlarged upon or modified the evidence actually received; we are not at liberty to speculate on what the proof might have been, if allowed, in the absence of an offer of proof.

■ If it be urged that the defendant as a layman was deficient in knowledge of the proper technique for perfecting a record, the answer is that one who chooses to defend himself in a criminal trial has no greater right in conducting his trial than a lawyer for the defense; procedural rules apply equally to both. (*People* v. *Mattson*, 51 Cal.2d 777, 794 [336 P.2d 937]; *People* v. *Chessman*, 38 Cal.2d 166, 174 [238 P.2d 1001].)

The next errors of the court took place during the questioning of a character witness called by the defendant:

"THE COURT: . . . Do you know his reputation for peace and quiet in the community? A. Yes.

"THE COURT: And is it good or bad? A. From the time of the occurrence that he has been charged with, it is all right.

"THE COURT: Well, is it good or bad? Now you men-

tioned the fact 'until this occurrence,' has this occurrence changed your mind concerning his character? A. To a degree, yes.

"THE COURT: *Then will you tell the jury what in your opinion his character is at this time based upon your knowledge, together with the fact that you have changed your mind on it since his arrest. Is it good or bad?*

"THE DEFENDANT: Well, up to this time, because of this arrest, is that right?

"THE WITNESS: Right.

"Q. But a man is not guilty until found guilty, right? A. Right.

"Q. So that you have been prejudiced at this time because of the arrest which anybody stands to reason . . . .

"MR. DOWNING: I understand the man's predicament, but he is not asking the question properly. Apparently he wants to know what the man's opinion as to his reputation is at the present time and that is . . . .

"THE DEFENDANT: No, I want to ask his opinion, what kind of person I had been before that time.

"THE COURT: All right.

"THE WITNESS: Up until the offense it was all right. Q. Good character? A. Yes.

"Q. Yes.

"THE COURT: *What is it now?* A. Well, I think now it is pretty bad.

"THE COURT: All right.

"THE DEFENDANT: Now it is pretty bad? A. Well, you asked me up until the time of the offense and I said it is pretty good and now I think it is pretty rough." (Italics added.)

■ Here the court erred in several respects; a properly qualified character witness may testify to the general reputation of a defendant in the community in which he lives for the traits involved in the crime of which he is accused, as of a time prior to the commission of the alleged offense. ■ The court did not follow this rule, and furthermore, emphasized the fact that the reputation of the defendant had been damaged by his arrest for the offense for which he was being tried nothwithstanding the presumption of innocence. But the defendant made no objection to the questions of the court, and the examination of a witness by a trial judge may not be assigned as error on appeal when no objection was made at the trial. (*People* v. *Corrigan,* 48 Cal.2d 551, 556

[310 P.2d 953]; *People* v. *Peters*, 191 Cal.App.2d 581, 585 [12 Cal.Rptr. 745].) ██ Furthermore, an injury to a defendant will not be presumed from the existence of error without a showing of a miscarriage of justice after an examination of the entire case, including the evidence. (*People* v. *Perez*, 58 Cal.2d 229, 250-251 [23 Cal.Rptr. 569, 373 P.2d 617]; *People* v. *Horowitz*, 70 Cal.App.2d 675, 704 [161 P.2d 833].) To secure a reversal, appellant's claim of error must be complemented by a showing that the error reasonably affected the result of the trial. (*People* v. *McAffery*, 182 Cal. App.2d 486, 492-493 [6 Cal.Rptr. 333].) No such showing is made on this appeal.

██ Next, appellant argues that the court should have given an instruction on its own motion with regard to narcotics as affecting the voluntary nature of a confession made while under their influence. (*People* v. *Lane*, 56 Cal.2d 773, 782 [16 Cal.Rptr. 801, 366 P.2d 57].) The difficulty with this contention is that the evidence received in the case from the doctor called by the defendant himself and the hospital records showed without contradiction that he was not under the influence of drugs at the time he made his detailed confession to the police. In such circumstances, it would not be the duty of the court to give such an instruction *sua sponte*, and no such charge was requested by the defendant. In fact, appellant does not challenge the correctness of the instructions actually given by the court.

██ If a defendant wishes an amplification of instructions on a subject as to which it is not the clear duty of the court to give such additional charge, it is "incumbent upon him to make such a request." (*People* v. *Biehler*, 215 Cal.App.2d 400, 406 [30 Cal.Rptr. 199]; *People* v. *Fowler*, 178 Cal. 657, 662-664 [174 P. 892]; *People* v. *Grasso*, 142 Cal.App.2d 407, 417 [298 P.2d 131].)

██ The doctor testified that appellant was not given any narcotics immediately before the giving of the statement, and that he would not have been under the influence of drugs given hours before; the appellant did not take the stand and dispute the testimony of the officers in support of the voluntary nature of the confession. The record fails to support appellant's contention that his statement was made while he was under the influence of narcotics or other drugs; a proper foundation was laid for the admission of his statement, and consequently evidence of his confession was properly received. (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752];

*People* v. *Lane, supra,* 56 Cal.2d 773, 781-782; *People* v. *Grasso, supra,* 142 Cal.App.2d 407, 417-418.)

 Appellant also argues that the court erred in not giving an instruction on the question of his mental condition not amounting to legal insanity as bearing on the presence or absence of specific intent, and contends that throughout the record there are indications of mental disturbance of appellant, and that at one point the court even asked, "Are you mentally unbalanced?" Evidence of mental infirmity not amounting to legal insanity is admissible and may be considered by the jury on questions of specific intent. *(People* v. *Baker,* 42 Cal.2d 550 [268 P.2d 705]; *People* v. *Wells,* 33 Cal.2d 330 [202 P.2d 53].)

 Respondent maintains that no instruction was requested by appellant as to his mental condition; appellant did not plead "not guilty by reason of insanity"; no evidence was offered that appellant displayed any defect of reason caused by disease of the mind which would have caused him not to know the nature of the act *(People* v. *Darling,* 58 Cal.2d 15, 22-23 [22 Cal.Rptr. 484, 372 P.2d 316]), or that appellant was other than sane; nor did the record display any reason for the court to entertain a doubt as to appellant's sanity pursuant to the provisions of section 1368 of the Penal Code. Respondent reasonably contends that the comment of the trial judge to appellant was only an expression of surprise invoked by one of appellant's statements to the judge.

 Appellant urges that the court improperly refused to subpoena some 33 witnesses from the county hospital at his request. Apparently some of the controversy, as between the defendant and the trial judge, occurred in chambers or outside of the courtroom. The trial judge stated generally in the record that the suggested subpoenas were for many people who could not possibly help in any way in the defense of the case, and the court permitted the defendant to call one of the doctors and to introduce the hospital record of his treatment.

 Obviously, the right to subpoena witnesses which is given to every defendant by the Constitution and laws of this state (Cal. Const., art. I, § 13; Pen. Code, § 686, subd. 3) does not authorize the indiscriminate use of the process of the court to call witnesses whose testimony could not possibly be received or which is grossly cumulative. (54 Cal.Jur.2d, Witnesses, § 4, pp. 201-204; *In re Finn,* 54 Cal.2d 807, 813 [8 Cal.Rptr. 741, 356 P.2d 685]; *People* v. *Linden,* 204 Cal.App.

2d 745, 746 [22 Cal.Rptr. 633].) When a defendant seeks to secure subpoenas in a criminal case, the record should be made complete as to the showing expected to be made by the applicant and also as to the ruling of the court, so that it could not possibly be charged that a defendant was improperly deprived of legitimate testimony in his own defense. In the particular circumstances of this case, it does not appear that the defendant in asking for subpoenas made any proper showing as to what he expected such witnesses to testify to, or that they could state any fact relevant or material to the charge against him; in our opinion, there was no deprivation of a fair trial through the failure to issue subpoenas. Anyone who has had anything to do with the administration of criminal law knows that defendants occasionally express a wish to call many witnesses from all parts of the state who cannot possibly add a single relevant fact to the complex of factors applying to the crime charged; the courts do have inherent power to control the issuance of their own process and they should not permit an abuse of the constitutional right to subpoena witnesses; however, the reasons for their rulings should be entirely in the open, and a defendant should be afforded an opportunity to show why he desires to have certain witnesses present to testify in his behalf; in this way, a complete and positive review of such rulings can be made. The record does not show reversible error in this respect.

 Appellant correctly points out that the jury should have fixed the degree of the offense. However, the Penal Code is perfectly clear that if the degree is not determined by the jury the crime shall be considered to be of the lowest possible degree; accordingly, in this case the crime was burglary of the second degree as a matter of law. (Pen. Code, § 1157.) In these circumstances, no harm was done to the defendant through the failure of the court to require the jury itself to pass on the degree of the crime in their verdict. However, the court mistakenly found the burglary to be of the first degree, and included in the judgment a pronouncement that the defendant was armed with a deadly weapon at the time of the commission of the crime; this allegation was not included in the charge contained in the information, and it was not passed upon by the jury; it therefore cannot constitute any legitimate part of the judgment (Pen. Code, § 3024, subd. (e); 2 Witkin, Cal. Crimes, §§ 995-998, pp. 948-950). This error could result in a lengthened prison

term for the defendant (Pen. Code, §§ 969c, 12022), and it must be corrected.

■ Complaint is also made that the trial judge did not grant probation. The record does not establish that this ruling was arbitrary or based upon a mistaken belief as to ineligibility (2 Witkin, Cal. Crimes, § 1064, p. 1005).

■ Probation is an act of clemency the granting or denial of which is within the discretion of the trial judge *(In re Osslo,* 51 Cal.2d 371, 377 [334 P.2d 1]).

To summarize, several errors not having to do with the degree of the offense were committed by the trial court, but the evidence of guilt is overwhelming, and any other verdict than that of guilty of burglary would have been a stultification of the oaths of the jurors. After an examination of the entire cause, including the evidence, this court is of the opinion that such errors so complained of have not resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½.)

The judgment of first degree burglary is modified by eliminating those portions which state that the defendant was armed with a deadly weapon at the time of the offense, and that the degree of the offense is burglary of the first degree. The trial court is directed to enter judgment against the defendant finding him guilty of burglary of the second degree and thereupon to pronounce judgment for said offense as prescribed by law (Pen. Code, § 1260; *People* v. *Bridgehouse,* 47 Cal.2d 406, 414 [303 P.2d 1018]), and the trial court is directed to send an abstract of such judgment without delay to the Department of Corrections. As so modified, the judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.