[Crim. No. 19738. Sept. 26, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM LAURENCE WETMORE, Defendant and Appellant.

## COUNSEL

Wilbur F. Littlefield, Public Defender, John M. Moore, Chief Deputy Public Defender, Harold F. Shabo, Leon M. Salter and Dennis A. Fischer, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

Burt Pines, City Attorney (Los Angeles), George C. Eskin, Chief Assistant City Attorney, Ward G. McConnell, Assistant City Attorney, S. Thomas Todd and Laurie Harris, Deputy City Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—Charged with burglary, defendant argued that psychiatric reports showed that as a result of mental illness he lacked the specific intent required for conviction of that crime. Relying on a dictum in

*People* v. *Wells* (1949) 33 Cal.2d 330 [202 P.2d 53], the trial court reasoned that because the reports described defendant's insanity as well as his diminished capacity, such description of defendant's condition in those reports should not be admitted to prove lack of specific intent. The court found defendant guilty of second degree burglary; subsequently, relying on the psychiatric reports, it found him insane.

We hold that the dictum from *Wells* on which the trial court relied must be rejected. The state bears the burden of proving every element of the offense charged; defendant cannot logically or constitutionally be denied the right to present probative evidence rebutting an element of the crime merely because such evidence also suggests insanity. Defendant's evidence established that he entered an apartment under a delusion that he owned that apartment and thus did not enter with the intent of committing a theft or felony. That evidence demonstrated that defendant lacked the specific intent required for a conviction of burglary; the trial court's refusal to consider the evidence at the guilt phase of the trial therefore constituted prejudicial error.

We reject the suggestion of amicus that we sustain the trial court by holding that a defense of diminished capacity cannot be raised whenever, owing to the lack of a lesser included offense, it might result in the defendant's acquittal. A defendant who, because of diminished capacity, does not entertain the specific intent required for a particular crime is entitled to be acquitted of that crime. If he cannot be convicted of a lesser offense and cannot safely be released, the state's remedy is to institute civil commitment proceedings, not to convict him of a specific intent crime which he did not commit.

The only evidence submitted to the trial court in this case was the testimony of Joseph Cacciatore, the victim of the burglary, at the preliminary hearing, and three psychiatric reports. Cacciatore testified that he left his apartment on March 7, 1975. When he returned three days later, he discovered defendant in his apartment. Defendant was wearing Cacciatore's clothes and cooking his food. The lock on the front door had been broken; the apartment lay in a shambles. Cacciatore called the police, who arrested defendant for burglary. Later Cacciatore discovered that a ring, a watch, a credit card, and items of clothing were missing.[1]

---

[1] At the preliminary hearing defendant appeared wearing one of Cacciatore's shirts. The magistrate directed the sheriff to provide defendant with a county shirt, and admitted Cacciatore's shirt into evidence as an exhibit.

The psychiatric reports submitted to the court explain defendant's long history of psychotic illness, including at least 10 occasions of hospital confinement for treatment. According to the reports, defendant, shortly after his last release from Brentwood Veteran's Hospital, found himself with no place to go. He began to believe that he "owned" property, and was "directed" to Cacciatore's apartment. When he found the door unlocked he was sure he owned the apartment. He entered, rearranged the apartment, destroyed some advertising he felt was inappropriate, and put on Cacciatore's clothes. When the police arrived, defendant was shocked and embarrassed, and only then understood that he did not own the apartment.

Defendant pled not guilty to a charge of burglary and requested court appointment of a psychiatrist to advise him whether to enter a plea based on insanity. (See Evid. Code, §§ 730, 1017.) After receiving the report from Dr. John Woodward, defendant entered a plea of not guilty by reason of insanity. The court then appointed Drs. Michael Colburn and Marshall Cherkas to examine defendant.

When the matter was called for trial defendant personally and all counsel waived trial by jury and stipulated that the cause be submitted on the transcript of the preliminary hearing, which contained only the testimony of Cacciatore, and the reports of Drs. Colburn and Cherkas. Defense counsel pointed out that burglary requires an entry with specific intent to commit larceny or felony. (See Pen. Code, § 459; *People* v. *Conway* (1969) 271 Cal.App.2d 15, 18 [76 Cal.Rptr. 251]; *People* v. *Gant* (1967) 252 Cal.App.2d 101, 115 [60 Cal.Rptr. 154].) The reports of Drs. Colburn and Cherkas, counsel argued, indicate that defendant entered the apartment under the delusion that he owned the apartment and its contents; he thus had no intent to commit theft or any felony.

In response to counsel's argument, the court acknowledged that defendant might lack the specific intent required to commit the crime of burglary. It stated, however, that under the controlling cases, "if a defendant's mental capacity which would preclude the forming of a specific intent is that of insanity," that mental condition is "not admissible to establish the question of lack of specific intent due to diminished capacity." The court thereupon found defendant guilty of second degree burglary. Turning to the issue of insanity,[2] the court found

---

[2]*People* v. *Vanley* (1974) 41 Cal.App.3d 846, 855 [116 Cal.Rptr. 446], required that the court before accepting a plea of not guilty by reason of insanity advise the defendant that the successful assertion of that plea might result in his indefinite commitment to a state hospital. The trial court here complied with that requirement. Defendant contends,

on the basis of the psychiatric reports that defendant was insane under the M'Naghten test then applicable[3] and, hence, not guilty by reason of insanity.

At a subsequent hearing the trial court found that defendant had not recovered his sanity. The court therefore ordered defendant committed to Patton State Hospital for treatment. Defendant appeals from the order of commitment. (See Pen. Code, § 1237, subd. 1; *People* v. *Vanley, supra,* 41 Cal.App.3d 846, 848, fn. 1.)

In holding that defendant's psychiatric evidence could not be utilized to prove that he lacked the specific intent required for the offense of burglary, the trial court followed a dictum laid down in our decision in *People* v. *Wells, supra,* 33 Cal.2d 330. *Wells,* the seminal decision which established the doctrine of diminished capacity in California law, held that "evidence of diminished mental capacity, whether caused by intoxication, trauma, or disease, can be used to show that a defendant did not have a specific mental state essential to an offense." (*People* v. *Conley* (1966) 64 Cal.2d 310, 316 [49 Cal.Rptr. 815, 411 P.2d 911].) In dictum, however, *Wells* stated that since sanity is conclusively presumed at the guilt trial, "evidence tending to show lack of mental capacity to commit the crime because of legal insanity is barred at that stage." (33 Cal.2d 330, 350.) The *Wells* opinion later restated that conclusion in different terms: "[I]f the proffered evidence tends to show not merely that he [defendant] *did* or *did not,* but rather that because of legal insanity he *could* not, entertain the specific intent or other essential mental state, then that evidence is inadmissible under the not guilty plea. . . ." (P. 351.)

As we shall explain, the *Wells* dictum imposes an illogical and unworkable rule which has not been followed in subsequent cases. *Wells* spoke of excluding evidence which tended to prove "lack of mental capacity . . . because of legal insanity." (P. 350.) Mental incapacity does not occur "because of legal insanity;" instead both insanity and diminished capacity are legal conclusions derived from evidence of defendant's

---

however, that the court should again advise him of this possibility after it found him guilty of burglary, so that he could intelligently decide whether to withdraw his plea. (See *People* v. *Redmond* (1971) 16 Cal.App.3d 931, 938-939 [94 Cal.Rptr. 543].)

We do not believe that we should impose a requirement that a defendant who has once been advised of the consequences of his plea must again be so advised. In any event the reversal of his conviction for burglary eliminates this issue.

[3]"Insanity, under the California M'Naughton test, denotes a mental condition which renders a person incapable of knowing or understanding the nature and quality of his act, or incapable of distinguishing right from wrong in relation to that act." (*People* v. *Kelly* (1973) 10 Cal.3d 565, 574 [111 Cal.Rptr. 171, 516 P.2d 875].)

mental condition. (See Comment (1971) 18 UCLA L.Rev. 561, 563-564, fn. 11.) Consequently, if the evidence of a defendant's mental illness indicates that the defendant lacked the specific intent to commit the charged crime such evidence cannot reasonably be ignored at the guilt trial merely because it might (but might not) also persuade the trier of fact that the defendant is insane.

*Wells'* distinction between evidence that defendant *did not* entertain the requisite intent, which is admissible, and evidence that he *could not* entertain that intent, which is inadmissible, cannot be supported. "[A]s a matter of logic, any proof tending to show that a certain mental condition could not exist is relevant and should be admissible to show that it did not exist. And, of course, proof that something could not exist is the best possible evidence that it did not exist." (Louisell & Hazard, *Insanity as a Defense: The Bifurcated Trial* (1961) 49 Cal.L.Rev. 805, 819.) Moreover, as Justice Kaus pointed out in *People* v. *Steele* (1965) 237 Cal.App.2d 182, 190-191 [46 Cal.Rptr. 704], evidence which tends to prove that a defendant could not entertain a certain intent may, when subject to cross-examination, convince the trier of fact that defendant was able to entertain the intent but did not do so on the occasion of the crime. Thus, *Steele* concludes, the trial court cannot refuse to admit such evidence when offered to prove diminished capacity.[4]

Numerous cases have repeated the *Wells* dictum barring evidence tending to prove insanity from admission at the guilt trial;[5] yet the courts,

[4]In a supplemental brief filed after oral argument, amicus curiae proposed that a defendant who desires to present evidence of diminished capacity be required to lay a foundation that the evidence, if believed, would not establish legal insanity. This proposal encounters two objections. First, as the Court of Appeal observed in *People* v. *Steele, supra,* 237 Cal.App.2d 182, evidence which at first viewing appears to prove insanity may, after cross-examination and rebuttal, prove only diminished capacity. Second, insanity is a jury question; the ruling of the trial judge, rendered in the context of an objection to the admissibility of evidence at the guilt trial, would not bind the jury at the sanity trial. Consequently, under the proposal of amicus a defendant who presented conclusive evidence that he lacked the capacity to commit a crime could be convicted of that crime because the evidence, subsequently held inadmissible at the guilt phase on the ground that it established insanity, subsequently proved insufficient to convince the jury of his insanity.

[5]*People* v. *Gorshen* (1959) 51 Cal.2d 716, 726 [336 P.2d 492]; *People* v. *Nicolaus* (1967) 65 Cal.2d 866, 881 [56 Cal.Rptr. 635, 423 P.2d 787]; *People* v. *McDowell* (1968) 69 Cal.2d 737, 738, 747 [73 Cal.Rptr. 1, 447 P.2d 97]; *People* v. *Cantrell* (1973) 8 Cal.3d 672, 686 [105 Cal.Rptr. 792, 504 P.2d 1256]; *People* v. *Gibson* (1949) 92 Cal.App.2d 55, 67 [206 P.2d 375]; *People* v. *Taylor* (1963) 220 Cal.App.2d 212, 216 [33 Cal.Rptr. 654]; *People* v. *Fernandez* (1963) 222 Cal.App.2d 760, 768 [35 Cal.Rptr. 370]; *People* v. *Steele, supra,* 237 Cal.App.2d 182, 190; *People* v. *Welborn* (1967) 257 Cal.App.2d 513, 521 [65 Cal.Rptr. 8]; *People* v. *Smith* (1973) 33 Cal.App.3d 51, 74 [108 Cal.Rptr. 698]; *People* v. *Eckstrom*

in violation of the *Wells* dictum, have consistently relied on such evidence to resolve issues of diminished capacity. A series of decisions of this court, beginning with *People* v. *Wolff* (1964) 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959], illustrates the point. Wolff, a 16-year-old boy, was convicted of the first degree murder of his mother. Although four psychiatrists testified at the sanity trial that Wolff was insane, the jury nevertheless found him sane. On appeal, we held that substantial evidence supported the finding of sanity, but that the evidence introduced at the sanity phase demonstrated as a matter of law that since Wolff did not premeditate, he committed not first, but second degree murder. Our opinion thus treated evidence introduced at the sanity phase for the purpose of establishing defendant's insanity as not merely probative but in fact convincing proof of diminished capacity.

The only decision that upholds an exclusion of evidence on the basis of the *Wells* dictum is *People* v. *Nicolaus, supra,* 65 Cal.2d 866. In *Nicolaus,* defense counsel asked a psychiatrist at the guilt phase if it were not true that defendant " 'didn't appreciate the distinction between right and wrong.' " (65 Cal.2d at p. 881.) We agreed with the trial court that the question was improper because it went to the issue of defendant's sanity. Yet even in *Nicolaus* the trial court at the guilt phase admitted extensive evidence relating to defendant's mental illness although such evidence suggested Nicolaus' insanity; the court even admitted testimony by a psychiatrist at the guilt phase that anyone who, like Nicolaus, killed his children without provocation is "legally insane and necessarily unable to premeditate and deliberate." (65 Cal.2d at p. 873.) We not only did not criticize the admission of such evidence at the guilt phase; citing *Wolff,* we relied on that evidence to reduce Nicolaus' conviction from first degree murder to second degree murder.

Two other decisions of this court (*People* v. *Goedecke* (1967) 65 Cal.2d 850, 857-858 [56 Cal.Rptr. 625, 423 P.2d 777, 22 A.L.R.3d 1213]; *People* v. *Bassett* (1968) 69 Cal.2d 122, 147-148 [70 Cal.Rptr. 193, 443 P.2d 777]) follow the same pattern. In each we relied upon evidence probative of insanity for the purpose of resolving issues of diminished capacity. If this court finds evidence inadmissible under the *Wells* dictum not only relevant to diminished capacity, but conclusive on that issue, how can we logically insist that the trier of fact disregard such evidence when it decides the issue of diminished capacity?

(1977) 71 Cal.App.3d 259, 262 [139 Cal.Rptr. 341]; *People* v. *Snow* (1977) 72 Cal.App.3d 950, 960-961 [140 Cal.Rptr. 427].

Two subsequent decisions explore the *Wells* issue in the context of a claim of inadequate representation by defense counsel. In *People* v. *Welborn, supra,* 257 Cal.App.2d 513, counsel had in his possession psychiatric reports explaining defendant's mental illness, but failed to introduce them at the guilt phase of defendant's murder trial. Although three of the five psychiatric reports stated that defendant Welborn was insane—and thus were inadmissible at the guilt phase under the *Wells* dictum—the Court of Appeal held that counsel's failure to offer those reports at the guilt phase constituted inadequate representation and required reversal of the conviction.

Two years later, in *People* v. *McDowell, supra,* 69 Cal.2d 737, defendant was charged with assault, burglary, robbery, and felony murder based upon a second robbery. Counsel failed to introduce psychiatric evidence at the guilt trial which pointed to diminished capacity but also tended to prove insanity. Citing *People* v. *Welborn, supra,* 257 Cal.App.2d 513, with approval, we reversed the convictions on the ground of inadequate representation.

The foregoing cases demonstrate that *Wells'* distinction between evidence which tends to prove insanity and evidence probative of diminished capacity cannot stand. (See *People* v. *Smith, supra,* 33 Cal.App.3d 51, 74-75; Morris, The Insanity Defense: A Blueprint for Legislative Reform (1975) pp. 45-46.) Although the cases occasionally reiterate the dictum that evidence of insanity cannot be admitted to prove diminished capacity, the appellate courts nevertheless consistently rely upon such evidence to resolve issues of diminished capacity, to hold that the trial courts err in refusing to consider such evidence at the guilt phase, and to rule that counsel who fail to offer such evidence at the guilt phase are incompetent. In concluding that the *Wells* dictum is erroneous and should no longer be followed, we merely confirm the actual practice of the California courts.[6]

---

[6]Recent court decisions, moreover, suggest that the *Wells* dictum, because it excludes evidence probative of defendant's innocence from the guilt phase, may be unconstitutional. In *Mullaney* v. *Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881], the United States Supreme Court implied broadly that the state must prove beyond a reasonable doubt every fact critical to the guilt of the offender or the severity of the offense. Although the court subsequently limited the broad language of *Mullaney* in *Patterson* v. *New York* (1977) 432 U.S. 197 [53 L.Ed.2d 281, 97 S.Ct. 2319], *Patterson* explained that the state has at least the constitutional duty to prove beyond a reasonable doubt all traditional elements of the crime. (432 U.S. 197, 210 [53 L.Ed.2d 281, 292]; see *People* v. *Borchers* (1958) 50 Cal.2d 321, 328 [325 P.2d 97]; *People* v. *Gentry* (1968) 257 Cal.App.2d 607, 610 [65 Cal.Rptr. 235].)

The *Wells* dictum limits the defendant's ability to rebut the element of specific intent

We therefore hold that evidence of diminished capacity is admissible at the guilt phase whether or not that evidence may also be probative of insanity.[7] The trial court erred when, relying on the *Wells* dictum, it refused to consider evidence of diminished capacity in determining defendant's guilt.

Amicus Los Angeles City Attorney urges that we sustain the trial court's ruling on a different ground. He contends that a defendant should be permitted to assert the defense of diminished capacity caused by mental disease or defect only to reduce a specific crime to a lesser included offense. Claiming that there is no lesser included offense in burglary, amicus argues that the trial court correctly refused to consider evidence of defendant Wetmore's diminished mental capacity.[8]

No decisions support amicus' contention that diminished capacity does not apply to crimes lacking lesser included offenses.[9] To the contrary,

by barring evidence at the guilt phase that, owing to mental illness, he lacks the requisite intent if such evidence would also tend to prove insanity. Although defendant can present that evidence later to prove insanity, defendant bears the burden of proof on the issue of sanity. (Evid. Code, § 522.) To deny the defendant the opportunity to present that evidence at a time when the state still bears the burden of proof beyond a reasonable doubt may deny him due process of law. (See *State* v. *Shaw* (1970) 106 Ariz. 103 [471 P.2d 715]; *State* v. *Stockett* (1977) 278 Ore. 637 [565 P.2d 739].)

[7]Language in *People* v. *Wells, supra,* 33 Cal.2d 330, 350-354 and in those subsequent decisions listed in footnote 5, *ante,* inconsistent with the views expressed herein, is disapproved.

[8]Defense counsel suggested at oral argument that defendant probably could have been convicted of the lesser offense of unauthorized entry (Pen. Code, § 602.5). Although unauthorized entry is not a necessarily included offense within the crime of burglary, "[i]n determining whether one crime is a lesser included offense of another, courts ordinarily look to the specific language of the accusatory pleading rather than to the statutory definition of the greater crime." (*People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603].) Arguably the information filed in the instant case adequately charged the lesser offense of unauthorized entry.

Defendant's right to present a defense of diminished capacity, however, cannot depend on whether the prosecution has so framed the accusatory pleading as to charge a lesser offense. We therefore assume for sake of argument that amicus is correct in its claim that defendant could not have been convicted of a lesser offense. Rejecting amicus' argument on its merits, we explain in text why we conclude that the lack of a lesser offense does not preclude assertion of a diminished capacity defense.

[9]In *People* v. *Nance* (1972) 25 Cal.App.3d 925 [102 Cal.Rptr. 266], the Court of Appeal held that diminished capacity did not constitute a defense to the crime of arson on the ground that arson was a general intent crime. (25 Cal.App.2d at p. 930; see *People* v. *Noah* (1971) 5 Cal.3d 469, 477-478 [96 Cal.Rptr. 441, 487 P.2d 1009].) The court based its decision in part on the fact that if a defense of diminished capacity were permitted, a pyromaniac might thus avoid confinement essential for the protection of society. (25

numerous cases have stated that diminished capacity arising from mental disease or defect serves as a defense to various crimes that may lack such included offenses. Amicus argues that in some of the cases such statements are dictum. (*People* v. *Wilson* (1968) 261 Cal.App.2d 12, 17 [67 Cal.Rptr. 678] (robbery); *People* v. *Gentry, supra,* 257 Cal.App.2d 607, 610 (issuing check without sufficient funds); *People* v. *Glover* (1967) 257 Cal.App.2d 502, 505-506 [65 Cal.Rptr. 219] (assault); *People* v. *Fernandez, supra,* 222 Cal.App.2d 760, 768 (burglary); *People* v. *Taylor, supra,* 220 Cal.App.2d 212, 216 (burglary).) Amicus then distinguishes the other cases as involving felony murders in which diminished capacity rebuts the underlying felony, but leaves defendant vulnerable to a manslaughter conviction. (See *People* v. *Mosher* (1969) 1 Cal.3d 379, 392 [82 Cal.Rptr. 379, 461 P.2d 659]; cf. *People* v. *McDowell, supra,* 69 Cal.2d 737, 747 (incompetency of counsel); *In re Miller* (1973) 33 Cal.App.3d 1005, 1020 [109 Cal.Rptr. 648] (incompetency of counsel).) No decision, amicus concludes, has *acquitted* a defendant on the basis of diminished capacity caused by mental disease or defect.

Nevertheless, this unanimity of judicial expression reinforces our conclusion that a defense of diminished capacity arising from mental disease or defect extends to all specific intent crimes, whether or not they encompass lesser included offenses. Clearly, if a crime requires specific intent, a defendant who because of mental disease or defect lacks that intent, cannot commit that crime. The presence or absence of a lesser included offense within the charged crime cannot affect the result. The prosecution must prove all elements of the crime beyond a reasonable doubt; we do not perceive how a defendant who has in his possession evidence which rebuts an element of the crime can logically be denied the right to present that evidence merely because it will result in his acquittal.

Amicus' argument, although legally flawed, addresses a matter of real concern. A defendant whose criminal activity arises from mental disease or defect usually requires confinement and special treatment. Penal Code sections 1026 and 1026a provide such confinement and treatment for persons found not guilty by reason of insanity. A defendant acquitted because, as a result of diminished capacity, he lacked the specific intent required for the crime cannot be confined pursuant to sections 1026 and 1026a, yet often he cannot be released without endangering the public

Cal.App.3d at p. 930.) *Nance* recognized, however, the principle that diminished capacity is a defense to crimes of specific intent, even if that defense results in an acquittal; its holding that arson is a general intent crime served to avoid application of that principle.

safety. (See *People* v. *Nance, supra,* 25 Cal.App.3d 925, 930; Goldstein, The Insanity Defense (1967) pp. 201-202; Brakel & Rock, The Mentally Disabled and the Law (1971) p. 395.)

The same danger may arise, however, when a diminished capacity defense does not result in the defendant's acquittal, but in his conviction for a lesser included offense. A defendant convicted of a lesser included misdemeanor, for example, will be confined for a relatively short period in a facility which probably lacks a suitable treatment program, and may later, having served his term, be released to become a public danger. (See Goldstein, *op. cit. supra.*) The solution to this problem thus does not lie in barring the defense of diminished capacity when the charged crime lacks a lesser included offense, but in providing for the confinement and treatment of defendants with diminished capacity arising from mental disease or defect.

The Lanterman-Petris-Short Act provides for the civil commitment of any person who, "as a result of mental disorder, [is] a danger to others, or to himself, or gravely disabled." (Welf. & Inst. Code, § 5150.) Recognizing that evidence of such mental disorder may arise at trial, the Legislature provided that a judge of the county where a prisoner is confined may institute evaluation and treatment procedures under the Lanterman-Petris-Short Act. (Pen. Code, § 4011.6.) Thus if evidence adduced in support of a successful diminished capacity defense indicates to the trial judge that the defendant is dangerous, the court is not compelled to foist the defendant upon the public; it may, instead, initiate procedures for civil commitment. (See *People* v. *Redmond, supra,* 16 Cal.App.3d 931, 939.)

The Attorney General points out that a person who commits a crime against property, such as defendant Wetmore, might not be commitable under the Lanterman-Petris-Short Act unless he were "gravely disabled." A more serious omission lies in the act's failure to provide for long term commitment of persons dangerous to others; unless found "gravely disabled," a person "who, as a result of mental disorder, presents an imminent threat of substantial physical harm to others" cannot be confined beyond the initial 90-day postcertification treatment period unless "he has threatened, attempted, or actually inflicted physical harm to another during his period of postcertification treatment."[10] (Welf. &

---

[10] In *In re Gonzales* (1971) 6 Cal.3d 346 [99 Cal.Rptr. 17, 491 P.2d 809], we noted the dilemma which may confront the hospital under the Lanterman-Petris-Short Act: whether to control Gonzales' violent behavior by medication, "thereby preventing him

Inst. Code, § 5304.) If the Lanterman-Petris-Short Act does not adequately protect the public against crimes committed by persons with diminished mental capacity, the answer lies either in amendment to that act or in the enactment of legislation that would provide for commitment of persons acquitted by virtue of a successful diminished capacity defense in the same manner as persons acquitted by reason of insanity are presently committed. (See Sherry, *Penal Code Revision Project* (1968) 43 State Bar J. 900, 918; Comment (1975) 15 Santa Clara Law. 911, 938; Note (1972) 19 UCLA L.Rev. 550, 580-583.) It does not lie in judicial creation of an illogical—and possibly unconstitutional—rule denying the defense of diminished capacity to persons charged with crimes lacking a lesser included offense.

Before concluding, we think it appropriate to note the effect of this decision, the latest in a line of decisions establishing and refining the concept of diminished capacity, on the California statutes governing the trial and disposition of persons who plead not guilty by reason of insanity. Doubtless when the 1927 Legislature provided for the bifurcated trial, it believed that it had cleanly separated the trial of issues of objective guilt from those involving mental illness or incapacity. (See Louisell & Hazard, *Insanity as a Defense: The Bifurcated Trial* (1961) 49 Cal.L.Rev. 805, 809-810; *Report of the Commission for Reform of Criminal Procedure* (1926) 1 State Bar J. 103, 104.) The rise of the defense of diminished capacity has obliterated the distinction the Legislature sought to enact. The development of that defense has brought it so close to that of insanity that we doubt that the issue of diminished capacity has currently been placed on the proper side of the judicial ledger. Indeed, when we changed the designation of the defense from diminished "responsibility" to diminished "capacity" (*People v. Anderson* (1965) 63 Cal.2d 351, 364 [46 Cal.Rptr. 763, 406 P.2d 43]) we approached more nearly the concept of *inability* to conform one's conduct to the requirements of law, which is now a facet of the test of insanity. We said in *Anderson* "Clearly we cannot hold defendant responsible for a crime which requires as one of

from performing the overt act that would provide a basis for detention under the 90-day postcertification procedure . . . with the consequent risk that he would be released and again wreak harm upon a member of the public; or . . . to take [him] off medication while still in the hospital, with the probability that he would revert to violent behavior toward the hospital staff and other patients but would at the same time by his violence provide the basis for the 90-day postcertification procedure." (6 Cal.3d at p. 350, fn. 9.) We there escaped the dilemma by approving Gonzales' long-term confinement under a conservatorship on the ground that he was not only dangerous but also "gravely disabled," (see 6 Cal.3d, at p. 351), but this avenue of escape is possible only if the person in question "is unable to provide for his basic personal needs for food, clothing, or shelter." (Welf. & Inst. Code, § 5008, subd. (h).)

its elements the presence of a state of mind which he is incapable of achieving because of subjective abnormality or impaired volitional powers." (63 Cal.2d at p. 365.)

Prior to this appeal we have been confronted with a substantial number of cases that have illustrated the overlap in evidence admissible to prove diminished capacity and evidence admissible to prove insanity; with the present decision the duplication approaches a totality. To require the jury to hear the same evidence twice, once to determine diminished capacity and once to determine insanity, appears a pointless waste of judicial time and resources. (See *People* v. *McDowell, supra,* 69 Cal.2d 737, 747-748, fn. 4; *People* v. *Smith, supra,* 33 Cal.App.3d 51, 74.)

As we did once before (see *People* v. *McDowell, supra,* 69 Cal.2d 737, 747-748 fn. 4), we again suggest that the Legislature reconsider the wisdom of the statutes providing for bifurcated trial. The evidentiary duplication inherent in the present procedure could be eliminated either by a unitary trial (*People* v. *McDowell, supra,* 69 Cal.2d 737, 747-748, fn. 4; see *People* v. *Williams* (1971) 22 Cal.App.3d 34, 53 [99 Cal.Rptr. 103]; Louisell & Hazard, *Insanity as a Defense: The Bifurcated Trial* (1961) 49 Cal.L.Rev. 805, 821), or by a new method of bifurcation in which issues of diminished capacity and insanity are tried together at the second phase of the trial (see Morris, The Insanity Defense: A Blueprint for Legislative Reform (1975) pp. 47-48; Comment (1971) 66 Nw.U.L. Rev. 327, 344). The decision to modify or abolish the bifurcated trial remains, of course, a legislative prerogative (*People* v. *McDowell, supra,* 69 Cal.2d 737, 747-748, fn. 4); our role is limited to noting the impact of judicial developments upon the statutory structure erected by the Legislature, and suggesting the possibility of legislative reconsideration. (See Witkin, Manual on Appellate Court Opinions (1977) § 88.)

█ In conclusion, the trial court in the present case erroneously refused to consider at the guilt phase evidence which clearly indicated that defendant believed that he owned the apartment and its contents, and thus entered the apartment without specific intent to commit a theft or felony. If the court had considered that evidence, it is reasonably probable that it would not have found defendant guilty of burglary; thus the error was prejudicial. Although defendant might have been subject to civil commitment proceedings even if acquitted of burglary (see *People* v. *Redmond, supra,* 16 Cal.App.3d 931, 939), he would not have been subject to commitment pursuant to Penal Code section 1026 as ordered by the trial court. (See *People* v. *Vanley, supra,* 41 Cal.App.3d 846, 855-857.)

The judgment (order of commitment) is reversed and the cause remanded for further proceedings consistent with this opinion.

Bird, C. J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.