THE PEOPLE, Plaintiff and Respondent, v. FIELDEN LYLE GENTRY, JR., Defendant and Appellant.

Jerome H. Sarrow, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

AISO, J. pro tem.*—Defendant Fielden Lyle Gentry, Jr., was convicted by the court, sitting without a jury, on three counts of violating Penal Code, section 476a (feloniously issuing checks without sufficient funds) and appeals from the ensuing judgment. Defendant was represented at trial by private counsel. Upon appeal, this court acting upon his request appointed appellate counsel for him.

Appellant contends: (1) the court erred in finding him guilty and denying his motion for a new trial upon all three counts, because the uncontradicted opinion evidence of the court-appointed psychiatrist in this case was that defendant did not have the requisite intent to defraud due to his diminished mental capacity; (2) the sentence to state prison was an

---

*Assigned by the Chairman of the Judicial Council.

abuse of discretion in view of defendant's diminished capacity; and (3) there was no evidence to prove that it was defendant who wrote and uttered the checks involved in count III. Contention (2), *supra*, was abandoned at oral argument.

Defendant opened a checking account under the name of Philip Gentry at the Westchester Branch, Security First National Bank of Los Angeles on December 13, 1963, with a deposit of $35. He thereafter made no further deposits into the account. He drew and uttered the following checks on the dates, in the amounts, and to the respective payees, with the account balance being as shown below:

| Count | Payee | Date | Amount | Acct. Bal. | To Pay For |
|---|---|---|---|---|---|
| I. | Orbach's Store | 2/22/64 | $106.05 | Closed | Merchandise |
| II. | Santa Fe R.R. | 5/9/64 | 203.93 | Closed | R.R. & Meal Tickets |
| III. | Orbach's Store | 12/19/63 | 58.24 | $10.00 | Merchandise |
| | Ditto | 12/19/63 | 62.35 | 10.00 | Merchandise |
| | Ditto | 1/18/64 | 48.31 | Closed | Merchandise |

Witnesses who accepted the checks involved in counts I and II, respectively, identified defendant as the person who drew the checks in their respective presence and who tendered them in payment of the merchandise or the tickets shown above.

Witnesses who accepted the three checks in count III testified that the checks were each drawn in their respective presence and accepted by the respective witnesses in payment of merchandise, but that they were unable to testify that the person was the defendant. However, the handwriting expert testifying for the People stated that in his opinion all of the checks involved in all three counts had been written by the same person as the one who had written the handwriting exemplar written by defendant. The contention that there is no evidence to establish defendant's identity as to the checks in count III cannot be sustained.

The claim that defendant as a matter of law lacked the specific intent to defraud due to his diminished mental capacity upon each occasion he feloniously issued the five checks received into evidence likewise is unsupported by the record.

The intent to defraud under Penal Code section 476a is a question of fact. (*People* v. *Madrid* (1960) 182 Cal.App. 2d 464, 466 [6 Cal.Rptr. 445].) It may be inferred from all the surrounding circumstances. (*People* v. *Costello* (1963) 223 Cal.App.2d 748, 751 [36 Cal.Rptr. 155]; *People* v. *Weiss*

610

(1954) 123 Cal.App.2d 487, 491 [266 P.2d 924]; and see: *People* v. *Bandy* (1963) 216 Cal.App.2d 458, 462 [31 Cal. Rptr. 10]; *People* v. *Greenwood* (1962) 207 Cal.App.2d 300, 304 [24 Cal.Rptr. 337].)

■ Lack of specific intent to defraud may be shown by adducing proof of diminished mental capacity upon a not guilty plea. ■ A "plea of not guilty puts in issue every material allegation of the accusatory pleading" (Pen. Code, § 1019), and when a specific kind or particular type of mental state or intent is a part of the corpus delicti of the crime charged, the not guilty plea puts in issue the existence of that state of mind. (See *People* v. *Henderson* (1963) 60 Cal.2d 482, 489-490 [35 Cal.Rptr. 77, 386 P.2d 677].)

■ "It has long been settled that evidence of diminished mental capacity, whether caused by intoxication, trauma, or disease, can be used to show that a defendant did not have a specific mental state essential to an offense." (*People* v. *Conley* (1966) 64 Cal.2d 310, 316 [49 Cal.Rptr. 815, 411 P.2d 911]; see also CALJIC 73-B, Revised.)

■ "In a criminal trial the burden is upon the prosecution to prove beyond any reasonable doubt every essential element of the crime of which a defendant is to be convicted." (*People* v. *Borchers* (1958) 50 Cal.2d 321, 328 [325 P.2d 97].) (Accord: *People* v. *Cohn* (1888) 76 Cal. 386 [18 P. 410]; *People* v. *Francisco* (1964) 228 Cal.App.2d 355, 358 [39 Cal.Rptr. 503]; *People* v. *Kovacevich* (1937) 19 Cal.App.2d 335, 338 [65 P.2d 807]; *People* v. *Vester* (1933) 135 Cal.App. 223, 226 [26 P.2d 685].) ■ Contrary to the improvident concession in appellant's brief that defendant had the burden of proving his diminished capacity by a preponderance of the evidence, only that quantum of evidence sufficient to raise a reasonable doubt as to whether defendant had the requisite specific intent was required of him. (*People* v. *Hardy* (1948) 33 Cal.2d 52, 63-66 [198 P.2d 865]; cf. Evid. Code, § 115; and comments under §§ 500 and 501.)

■ The only defense evidence presented at trial was the testimony of Dr. Bruno Bielinski, who had examined defendant pursuant to an appointment under Code of Civil Procedure, section 1871. On direct examination, he testified that due to defendant's neurotic disorder, "he involuntarily wrote the checks without any intent to willfully cheat or defraud, and the reason for why he did that was because he had a marked fear of losing his wife and his family." He further testified that defendant knew that what he was doing was

wrong, although his fear described above precluded him from "fully understanding or appreciating the quality of his actions." On cross-examination, he further explained what he meant by defendant's neurotic disorder. "A neurotic personality is a definite clinical category, just like schizophrenic or any disorder like organic brain syndrome, and a neurotic personality actually is one who overreacts to stresses and has fear and does not adjust actually to reality as well as, say, the average normal individual." The psychiatrist also admitted on cross-examination that the fear of losing his wife and children suffered by defendant was *only one factor,* and that defendant's acts of check-writing were also induced by a desire of obtaining the merchandise and railroad and meal tickets.

██ The fact that Dr. Bielinski's testimony was the only expert testimony presented at trial does not mean that his opinion thereby becomes binding upon the trier of fact. (*People* v. *Williams* (1957) 151 Cal.App.2d 173, 187 [311 P.2d 117]; Pen. Code, § 1127b; see, 31 Am.Jur.2d, Expert and Opinion Evidence, § 183, pp. 748-750, § 186, pp. 755-756.) Such testimony is to be weighed against the other evidence in the case. While expert opinion rebuttal evidence would have been relevant and possibly helpful, there was no legal requirement upon the People to produce such evidence. (*Arais* v. *Kalensnikoff* (1937) 10 Cal.2d 428, 433 [74 P.2d 1043, 115 A.L.R. 163].) ██ Opinion evidence too, it must be remembered, is a type of circumstantial evidence and not direct evidence. (*People* v. *Goldstein* (1956) 139 Cal.App.2d 146, 153-154 [293 P.2d 495]; and see, Witkin, California Evidence (2d ed., 1966), §§ 299, 300, pp. 263-265.)

██ The expert testimony of the psychiatrist in this case even when examined for internal consistency and weighed by Penal Code, section 1127b standards is equivocal on the precise issue whether defendant lacked the mental ability to entertain a specific intent to defraud on each of the respective occasions that he drew and uttered the bad checks. The witness characterized defendant's mental difficulties as being of the type known as a neurotic personality, which he explained to be a term indicating a clinical category like schizophrenia or organic brain syndrome. Such a broad classification does not necessarily exclude a sufficient capacity to form a specific intent. (See comment re: use of schizophrenia as a clinical classification; *People* v. *Wolff* (1964) 61 Cal.2d 795, 815-816 [40 Cal.Rptr. 271, 394 P.2d 959].) Organic brain syndrome

likewise covers conditions which may or may not impair one's ability to scheme, plan, or entertain an intent. In sum, the testimony in net effect amounted only to defendant's having a lower threshold than the average normal mature person in controlling his fear of losing his wife and family. It is stated in *People* v. *Wells* (1949) 33 Cal.2d 330, at page 345 [202 P.2d 53], that for fear to negative criminal responsibility upon the theory of diminished capacity, it must be the *only factor* causing the criminal act. Here, fear of losing his wife and family was admitted by the expert on cross-examination to have been only one factor, and that the desire of obtaining the merchandise and tickets were also factors.

The opinion evidence inconclusive and equivocal when standing alone becomes even more attenuated when considered in the light of other facts in this case. The check for $48.31 (Exhibit 5) was passed in the men's furnishings section of Orbach's store. As to how this check, apparently not in payment of any woman's apparel as the others passed at Orbach's, is connected with the fear of losing his wife and family, the record is silent. The five checks were not passed in one bad-check passing incident. Weeks and months elapsed between some of the episodes. There is some intimation in the psychiatrist's direct examination that defendant was unemployed when some of the checks were passed. Defendant drew checks totalling $478.88 against an account into which he had made just one initial deposit of $35.

At most, the expert opinion testimony only created a conflict in the evidence. The trier of fact was not bound by it. Even assuming arguendo that it brought the state of the evidence to where on the appeal record it is just as consistent with defendant's innocence as it is with the trial court's findings of guilt, it is not within the province of this court to reverse the trial court's findings. (*People* v. *Rittger* (1960) 54 Cal.2d 720, 729-730 [7 Cal.Rptr. 901, 355 P.2d 645] ; *People* v. *Daugherty* (1953) 40 Cal.2d 876, 884-886 [256 P.2d 911] ; cf. *People* v. *Hillery* (1965) 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382].)

Judgment is affirmed as to all three counts.

Kaus, P. J., and Stephens, J., concurred.