Filed 5/21/25  P. v. Brock CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083139 |
| v. | (Super.Ct.No. FBA04003) |
| MICHAEL BROCK, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Tony Raphael, Judge.  Affirmed.

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

In 1997, defendant Michael Brock pled guilty to one count of murder based on his participation along with three others in planning and carrying out a carjacking that resulted in the shooting death of the victim in a landfill near Barstow, California. Brock was sentenced to a term of 25 years to life. In 2019, following enactment of Senate Bill No. 1437, Brock filed a petition pursuant to current Penal Code[1] section 1172.6 (formerly § 1170.95). The trial court determined he had established a prima facie showing of eligibility and issued an order to show cause.

Following an evidentiary hearing, the court found Brock was not entitled to resentencing relief because he was a major participant and acted with reckless indifference to human life. Brock appealed, and, after finding there was substantial evidence to support the finding that he was a major participant, we also concluded that Brock acted with reckless indifference to human life, but that the trial court had not considered how Brock's youth affected that finding. (*People v. Brock* (Feb. 26, 2023, E077983 [nonpub. opn.] (*Brock I*).) We remanded with directions to conduct a further evidentiary hearing to consider whether Brock's youthful characteristics and immaturity required reconsideration of the trial court's finding that he was a major participant who acted with reckless indifference to human life. (*Brock I*, *supra*, E077983.)

On remand, defense counsel waived Brock's personal appearance, and the parties submitted the issue on a report by an expert on the youth factors affecting culpability of

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

youthful offenders. The court again denied Brock's petition for resentencing. Brock appeals anew.

On appeal, Brock argues (1) his right to be present for the evidentiary hearing was violated when the court proceeded with the hearing upon counsel's waiver of Brock's presence; and (2) a new evidentiary hearing is required because the trial court's consideration of Brock's youth-related factors was flawed, and because defense counsel rendered ineffective assistance at the hearing. We affirm.

**BACKGROUND**

At the evidentiary hearing, the court adopted the facts from our previous opinion (*Brock I*, *supra*, E077983) without objection by either party, and both parties rely on it on appeal. We therefore recite the facts from pages 3 through 6 of that opinion, which includes a summary of the first evidentiary hearing, with additions related to the evidentiary hearing on remand.

"On the date of the killing, defendant and his three companions (Alexander Sanns, Dwayne Peirfax, and David Ortiz) met at Peirfax's house, and discussed how they were bored and decided to drive to Las Vegas, but first they would need to steal a car. Defendant went home and got his gear—dark clothing, a dark hat, jacket and gloves—prior to the planned theft. He also brought a roll of duct tape to tie up any victim. They went to an apartment complex to steal a car. They went to the parking lot of the complex waiting for a prospective victim to show up so they could steal his or her car.

"Victim Robert Chen drove up in a vehicle, and, as he exited the car, he was approached by defendant and Sanns. Sanns had his hand on a large caliber gun in his

3

pocket, which he drew out as they approached the victim. The gun had a sawed-off barrel. Defendant was standing next to Sanns when the car was "jacked."

"According to defendant, Sanns demanded the victim's car keys, and the victim complied. According to Sanns, defendant demanded the keys as Sanns pointed the gun at the victim. Then defendant called to Ortiz and Peirfax who were waiting near a trash dumpster. Ortiz and Peirfax joined defendant and Sanns, as the victim was forced into the rear seat of the vehicle, with Sanns and Peirfax on either side of him. Ortiz drove the vehicle, with defendant in the front passenger seat.

"As they drove, Sanns and Peirfax took property from the victim: $60 in cash, and a watch. After Sanns took money from the victim's wallet, he handed the wallet back to the victim. Eventually they reached the Barstow trash landfill, where they made a U-turn and stopped on the opposite side of the road, facing Barstow. Prior to arriving at the landfill, defendant looked through the glove box of the victim's vehicle, looking for whatever might be there. The defendant along with Ortiz and Sanns walked the victim out into the desert while Peirfax waited at the car. Defendant stopped at some point, while Sanns and Ortiz proceeded approximately 20 feet further with the victim. Sanns tried to fire the gun but was unsuccessful, so Ortiz, who noticed the barrel was loose, took the gun from him and jammed the barrel back into the gun. Thereafter, Ortiz fired three shots [fn. omitted], and the three of them (defendant, Sanns and Ortiz) returned to the car.

"Meanwhile, in the trunk of the vehicle, the victim's briefcase, which held his phone, was found; Peirfax also found a key chain, a pocketknife and some cases of V-8

4

juice in the trunk, which he kept. Defendant received $20 of the victim's cash. After the killing, the group returned to Barstow where the gun and the briefcase were dropped off at the house of an acquaintance. The car was left at a Sunset Drive address, approximately one mile and a half from the apartment where the victim was staying.

"The next morning, an employee of the landfill discovered the body of the victim and reported it to co-workers and called for emergency assistance. The victim had suffered three gunshot wounds: one shot was to the face, with noticeable stippling. A second wound entered the victim's back and exited from his chest. The third wound was on the victim's inner left wrist, with an exit wound on the outer wrists. The facial wound, which penetrated the brain before exiting, was the cause of death. The wounds to the wrist lined up with the chest exit wound, suggesting the victim was laying on his left side or face when inflicted.

"Each of the perpetrators were interviewed and made incriminating statements which were admitted at the preliminary hearing. A second amended information charged defendant (along with his co-perpetrators) with murder (Pen. Code § 187, subd. (a)) [fn. omitted] with two special circumstances alleging the murder occurred during the commission of a kidnaping, as well as during the commission of a robbery (§ 190.2, subd. (a)(17)). Defendant was also charged with carjacking (§ 215, count 2), kidnaping (§ 207, subd. (a), count 3), and robbery (§ 211, count 4). Respecting [all] counts, it was further alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)), and that a principal personally used a firearm (§ 12022.5, subds. (a)(1), (a)(2)).

"During voir dire at trial, and apparently after in limine motions were considered by the court [fn. omitted], defendant entered a change of plea to guilty of first degree murder, based on carjacking, and was sentenced to a stipulated sentence of 25 years to life.  In return for the plea, the prosecution dismissed the remaining counts and all enhancements and special circumstances allegations.  The factual basis for the plea would be established by the police reports and the transcript of the in limine motions.

"On January 15, 2019 [fn. omitted], following the enactment of Senate Bill No. 137, defendant filed a petition for resentencing pursuant to former section 1170.95.  On June 24, 2021, the trial court determined defendant had made a prima facie showing of eligibility and issued an order to show cause hearing.  On October 29, 2021, the evidentiary hearing took place.  The parties stipulated that the court could consider the preliminary hearing transcript, along with the second amended information, the plea agreement and sentencing documents, along with parties' respective briefs and their accompanying exhibits, including the decision in the direct appeal of *People v. Sanns*, (filed February 14, 2002, E028389, nonpub. opn.) in which defendant raised a sentencing error.  After considering all the submissions and the arguments of counsel, the court concluded the People had proven beyond a reasonable doubt that the defendant was a major participant who acted with reckless indifference to human life, and denied the petition.

"Defendant appealed."  (*Brock I*, *supra*, E077983.)

On appeal, we found there was substantial evidence to support the trial court's finding that Brock was a major participant who acted with reckless indifference to human

6

life, but that the court had not taken into consideration the factors of Brock's youth in determining finding that Brock acted with reckless indifference. (*Brock I*, *supra*, E077983.)

On remand, after numerous continuances at hearings where Brock often appeared in person,[2] the trial court again denied relief. Brock again appeals.

DISCUSSION

1. ***Whether Brock's Absence at the Evidentiary Hearing Violated his Right to be Present***

Brock argues that remand is required because he had a constitutional right to be present at the evidentiary hearing, and that the waiver of his presence (occasioned by his voluntary absence from the hearing) violated that right. We disagree.

a. ***Legal Principles***

Under section 1172.6, the "'process begins with the filing of a petition containing a declaration that all requirements for eligibility are met.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 450; § 1172.6, subd. (b)(1)(A).) If the petitioner makes this showing, the court is to issue an order to show cause and hold an evidentiary hearing to determine whether to grant the requested relief. (§ 1172.6, subds. (c), (d); *Curiel*, *supra*, at pp. 450–451; *People v. Strong* (2022) 13 Cal.5th 698, 708–709.)

At the evidentiary hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under

---

[2]    Brock was released on parole on October 1, 2020. He was scheduled to be discharged from parole on October 1, 2023.

7

sections 188 or 189, as amended effective January 1, 2019.  (§ 1172.6, subd. (d)(3).)  The court may consider evidence admitted at any prior hearing or trial, which is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  (*Ibid*.)  The parties "may also offer new or additional evidence to meet their respective burdens."  (*Ibid*.)

A defendant has the constitutional right to be personally present at the evidentiary hearing on his resentencing petition pursuant to section 1172.6, to protect the defendant's opportunity for effective cross-examination, or to allow him or her to participate at a critical stage and enhance the fairness of the proceeding, guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution, as well as article 1, section 15 of the California Constitution.  (*People v. Basler* (2022) 80 Cal.App.5th 46, 57 (*Basler*), citing, among other authorities, *People v. Powell* (2018) 6 Cal.5th 136, 147 (*Powell*) & *People v. Flinner* (2020) 10 Cal.5th 686, 710.)  The state constitutional right to be present is generally coextensive with the federal due process right.  (*Powell, supra*, at p. 147; *People v. Blacksher* (2011) 52 Cal.4th 769, 799.)  "Critical stages of a defendant's criminal prosecution include the imposition of sentence, a sentence modification hearing, and resentencing."  (*Basler*, *supra*, at p. 57.)

"Yet that right is not absolute; it may be expressly or impliedly waived."  (*People v. Ramirez* (2022) 14 Cal.5th 176, 188 (*Ramirez*).)  "'[A] defendant's right to be present depends on two conditions:  (1) the proceeding is critical to the outcome of the case, and (2) the defendant's presence would contribute to the fairness of the proceeding.'"  (*People v. Quan* (2023) 96 Cal.App.5th 524, 532 (*Quan*).)  "''In determining whether a defendant

is absent voluntarily, a court must look at the 'totality of the facts.'"'" (*Ramirez*, *supra*, 14 Cal.5th at p. 188, quoting *People v. Espinoza* (2016) 1 Cal.5th 61, 72.)

The standard under sections 977 and 1043 is similar. "'"[T]he accused is not entitled to be personally present during proceedings which bear no reasonable, substantial relation to his opportunity to defend the charges against him.'"'" (*People v. Davis* (2005) 36 Cal.4th 510, 530 (*Davis*), quoting *People v. Ervin* (2000) 22 Cal.4th 48, 74.)

Pursuant to section 1043, subdivision (a), persons who are not in custody also have a right to be present, although such a person's voluntary absence from proceedings will not prevent a trial from going forward (§ 1043, subd. (b)), and "[s]ubdivisions (a) and (b) shall not limit the right of a defendant to waive the right to be present in accordance with Section 977." (§ 1043, subd. (d).) Subdivision (e)(4)(B) of section 1043 provides that a court may "proceed with the trial if the court finds the defendant has absented themselves voluntarily with full knowledge that the trial is to be held or is being held."

"The defendant's presence is required when the court must make fact-bound determinations as it exercises its sentencing discretion, such as considering youth-related mitigating factors [citation], or after a change in law regarding an enhancement the court initially imposed." (*Quan*, *supra*, 96 Cal.App.5th at p. 533.) The right to be present at a section 1172.6 evidentiary hearing "includes the opportunity 'to hear the People's evidence and argument . . . , then decide whether to testify and/or present additional or new mitigating evidence.'" (*Quan*, at p. 534.)

However, a defendant may waive his or her right to be present at a critical stage, including an evidentiary hearing conducted pursuant to section 1172.6, "'provided the waiver is knowing, intelligent, and voluntary.' [Citation.] In certain circumstances, defense counsel may waive a defendant's presence but '[a]t a minimum, there must be some evidence *that the defendant understood the right he was waiving and the consequences of doing so.*' [Citations.] The statutory provision which permitted a court to proceed in the defendant's absence at the time of the hearing in this case required a written waiver executed by the defendant in open court." (*Quan*, *supra*, 96 Cal.App.5th at p. 535.)[3]

In *Davis*, the Supreme Court addressed a situation in which defense counsel waived the defendant's presence for a hearing on a motion to suppress evidence. There, the court concluded there was no valid waiver where "there [wa]s scant evidence of consent, and even less evidence that defendant understood the right he was waiving and the consequences of his waiver. All the record shows is that defense counsel represented to the court that counsel had discussed the hearing with defendant and that defendant would waive his presence. There is no evidence that defense counsel informed defendant of his right to attend the hearing; nor is there evidence that defendant understood that by

---

**3** The statutory changes to section 977 acknowledged the right to be present but added provisions for remote appearances. (See Stats. 2023, ch. 190, § 3, Sen. Bill No. 135 (2023–2024 Reg. Sess.) § 3.) In 2023, subdivision (j) was amended to indicate the changes would remain until 2025, and included a new version of section 977 which would go into effect in 2025. (Stats. 2023, ch. 190, § 3, Sen. Bill No. 135 (2023–2024 Reg. Sess.) § 4.)

absenting himself from the hearing he would be unable to contribute to the discussion of the contents of the tape recording." (*Davis*, *supra*, 36 Cal.4th at p. 532.)

Although *Davis* involved an evidentiary hearing, the court concluded the lack of a valid waiver was harmless because defendant's attorneys had access to the tape and the proposed transcript before the hearing and had ample opportunity to discuss the contents with defendant. Additionally, as to the portions of the tape that were "'unintelligible,'" the reviewing court concluded the defendant's presence would have added little to his counsel's ability to argue the motion. Also, there was no way to determine if the defendant could have filled in the "'unintelligible'" portions of the tape, or, if he could, whether his interpretation would have been meaningful. (*Davis*, *supra*, 36 Cal.4th at p. 533.) And, despite the "'unintelligible'" passages, "the vast majority of the crucial passages that linked defendant to the shooting were intelligible." (*Id*., at pp. 533–534.) Finally, even if defendant's presence would have aided his counsel in identifying the voices on the tape, the court concluded the jury could have done so without his input by relying on the witness's identification of the speakers. (*Id.*, at p. 534.) For those reasons, the court concluded that defendant's absence from the hearing was harmless beyond a reasonable doubt. (*Ibid*., at p. 534, citing *Chapman v. California* (1967) 386 U.S. 18, 23.)

Where a defendant's presence was not expressly waived, "[e]rror under sections 977 and 1043 is state law error only, and therefore is reversible only if "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Davis*, *supra*, 36 Cal.4th at pp. 532–533, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.)

*b. Analysis*

No prejudicial error occurred here. In the proceedings below, there were some hearings for which Brock's presence was ordered, at least one hearing where Brock was permitted to decide if he wanted to be present, and three hearings at which defense counsel waived Brock's presence, without a later objection.

Brock was personally present on October 23, 2023, when the November 17, 2023, hearing date was set, and where the parties stipulated that the evaluation report of Dr. Graham-Howard could be considered by the court, along with documents filed by the probation officer. At that time, the People indicated their office was continuing to search its record for the elusive original probation report. The next hearing was set for December 15, 2024, to give time for the People to file any supplemental response addressing the report by Dr. Graham-Howard. Because the People stipulated that the court could consider the report, and because the matter had been remanded solely for the trial court to determine if Brock's youth-related factors would change its assessment of its previous finding that Brock acted with reckless indifference to human life, no witness testimony was anticipated for final hearing.

On December 15, 2023, the parties appeared but defense counsel was not present due to a scheduling conflict and his inability to travel to the court from Victorville, and the matter was continued because defense counsel needed to be personally present for argument. Brock was present at that hearing.

On the date of the hearing, January 26, 2024, when the matter was submitted for decision, defense counsel informed the court that Brock was aware that he had the option

12

to be present or not, and that counsel had attempted to contact him more than once by telephone before the hearing. During that hearing, Brock's mother contacted defense counsel's office (which message was relayed to counsel by text message) to indicate Brock was currently out of town for work, for which reason he could not make court that day, and that he was aware there was a court hearing. No objection was communicated to counsel or the court to the matter proceeding that day and there was no indication that Brock desired a continuance to insure his attendance.

Most importantly, both defense counsel and the People submitted the matter for decision based on the briefs and documents filed without any further legal argument, so there was no anticipated testimony on which he might need to contribute to the discussion. Additionally, this matter was on remand based on our prior disposition directing the trial court to consider Brock's youth-related factors to determine if they would affect the court's finding of reckless indifference to human life. This was not a full do-over of the evidentiary hearing. No testimony was to be introduced because the parties stipulated to the documents that the trial court should consider in making its findings, and Brock was aware that the report on his youth-related factors had been received by his counsel and submitted to the court the previous November, when Brock was present.

Counsel has cited a number of reasons why Brock's presence might have impacted the proceedings, but counsel's argument respecting prejudice presupposes that evidence or testimony would be offered at the hearing. Because the parties had stipulated to submitting the question of Brock's youth-related factors based on the evaluation and

13

documents from the court records, and no testimony was anticipated, this argument is wholly speculative.

Reviewing the "'totality of the facts,'" (*Ramirez*, *supra*, 14 Cal.5th at p. 188), we conclude that Brock voluntarily absented himself from the hearing and that counsel's waiver did not violate Brock's right to be present. We agree that the trial court was required to make a fact-bound determination in considering the youth-related mitigating factors (*Quan*, *supra*, 96 Cal.App.5th at p. 533), but the People had stipulated to admission of the expert's report on the youth-related factors at a hearing at which Brock attended, and did not introduce any contrary evidence or supplemental pleadings. Because no testimony would be taken, there was little Brock could say or do that would assist counsel at the hearing.

As in the *Davis*, *supra*, 36 Cal.4th 510 case, any error was harmless beyond a reasonable doubt, given the limited purpose and scope of the hearing, Brock's awareness of the hearing and its scope, his presence at many hearings and his acquiescence in counsel's waiver of his presence at others, as well as the fact no testimony was going to be adduced at the latest hearing. No prejudice inured to Brock by reason of his voluntary absence.

2. ***Whether the Trial Court Failed to Consider Factors Relating to Brock's Youth in Denying Resentencing on Remand***

Brock argues the trial court gave little consideration to his youth-related factors, requiring reversal. Brock complains that the only new evidence submitted was the report prepared by Dr. Graham-Howard, and gave no import to the fact Brock was only 16 years

14

old at the time of the crimes, and that the court did not consider the original probation report, which was considered by Dr. Graham-Howard and corroborated statements made in her report. We disagree.

a. ***General Legal Principles***

"Under section 1172.6, subdivision (d)(3), the superior court acts as an independent fact finder and determines whether the People have met their burden in proving the defendant guilty of murder under the revised felony-murder law." (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1016, citing *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984; § 1172.6, subd. (d)(3).)

We review a trial court's factual findings, made at a section 1172.6, subdivision (d)(3) evidentiary hearing, for substantial evidence. (*People v. Ramirez, supra*, 71 Cal.App.5th at p. 985; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.) "In conducting our review, we consider the whole record in the light most favorable to the superior court's findings" (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066, citing *People v. Rivera* (2019) 7 Cal.5th 306, 323), and we presume "'every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.'" (*Rivera*, *supra,* at p. 331.)

"We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Pham* (2009) 180 Cal.App.4th 919, 924–925; see *People v. Owens* (2022) 78 Cal.App.5th 1015, 1022, quoting *People v Zamudio* (2008) 43 Cal.4th 327, 357.)

15

After reviewing the whole record, we "'determine whether *any* rational trier of fact could have found the essential elements of the crime … beyond a reasonable doubt.'" (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270.)

b. *Analysis*

Regarding the original probation report, we note that on November 17, 2023, the court referred to more than one "packet" of documents it had received from the probation officer.[4] A copy of the original probation report is included in the second packet. The People argue Brock invited the error because both prosecution and defense counsel submitted the matter for decision on the assumption the report was not available for the court to review.

The original probation report was apparently in the court file approximately two months before the January 2024 hearing, but neither the parties nor the court appeared to be aware of it. Instead, the parties submitted on the evaluation of Brock's youth-related factors prepared by Dr. Graham-Howard, which was admitted into evidence by the parties' stipulation, and which referred to information in that original probation report, although the psychologist mistakenly refers to it as having been prepared on November 9, 2020, instead of 2000.

Also submitted were other documents related to the case, including Brock's parole discharge summary report, to which the trial court made direct reference. However, the

[4]    Two copies of the original probation report are included in the record:  the first appears at the beginning of the confidential clerk's transcript, and the second appears as an attachment to the later packet submitted by the probation officer on November 7, 2023, in anticipation of the hearing scheduled for November 17, 2023.

16

trial court stated it did not have a copy of the original probation report, and neither the People nor defense counsel indicated they had possession of that report, either. Apparently all parties and the court were unaware that the original probation report had been submitted.

After reviewing Dr. Graham-Howard's report, the information she gleaned from the probation report is accurately summarized, although we note that page 17 of the report, in which the statement from Brock's father begins, is missing. Nevertheless, the substance of the matters covered in the probation report were accurately presented in the report by Dr. Graham-Howard, and considered by the trial court.

Both counsel for Brock and the People submitted the matter for decision based on the documents of which they were aware, which did not include the original probation report. Because Brock did not seek further efforts to locate the original probation report, he forfeited any claim of error that the court failed to consider it.

The report of Dr. Graham-Howard outlined the youth related factors pertinent to Brock's degree of culpability and the trial court did review it, although it reached a conclusion different from that of the evaluator. This does not mean the court failed to consider it properly. Courts are not bound to accept recommendations in the probation report, but they commonly do. (*People v. Welch* (1993) 5 Cal.4th 228, 234.) Additionally, "expert testimony [or opinion], even if uncontradicted, is circumstantial rather than direct evidence, and it is not binding upon the court." (*Johnathan v. Shea* (1971) 19 Cal.App.3d 328, 334, citing *People v. Gentry* (1968) 257 Cal.App.2d 607, 611.)

17

Here, the court considered all the evidence submitted by the parties before making its findings that Brock manifested reckless indifference to human life. Now Brock claims the matter must be remanded again because the trial court did not consider the probation report, as well as his claim that the court did not properly consider Dr. Graham-Howard's conclusion in rendering its decision. Brock's assertion is tantamount to a claim that the court did not properly weigh the evidence. To the contrary, the record shows the court considered the information that was submitted and ascribed to it the weight that was a matter for the trial court to decide. Once admitted, "the trier of fact determines the *weight* it gives to that evidence." (*People v. Turner* (2020) 10 Cal.5th 786, 805.)

We also determine that the court did not disregard the information summarized in the youth-factors report although it referred to Dr. Graham-Howard's caution in interpreting information based on the self-reporting by Brock, where persons in his position might be motivated to present themselves in a favorable light. However, the court was not persuaded Brock had been swept up in the circumstances due to peer pressure because he had participated in the planning and had been present as well, at every stage of the crime. The court did discount Brock's statement he did not know the victim would be killed when they (all the perpetrators) drove the victim to the desert. However, the weight to be accorded to Brock's statement was a matter for the court to decide.

There is substantial evidence to support the court's findings because Brock was well aware the victim had been escorted to the area where the shooting took place at gun point and the record shows the victim pled for his life, but Brock did nothing to prevent

the shooting. This is a significant factor, which, along with the other factors the court was required to consider in determining if Brock acted with reckless indifference to human life, supports the trial court's decision.

Additionally, we conclude the failure to consider the original probation report was waived when defense counsel stated he did not have a copy of the report and intended to submit the matter for decision based on the documents already submitted, without seeking another continuance to obtain the report. Although Brock now asserts that defense counsel should have sought a continuance, that is unnecessary, where Brock has not established that a different result would have occurred if the trial court and all counsel had realized the original probation report had already been submitted and summarized it. Having reviewed that report ourselves, and the information contained therein that Brock was heavily involved in gang activity, it is unlikely that a different result would have been achieved.

Whether a defendant was a major participant in the underlying felonies who acted with reckless indifference to human life is predominantly a factual question reviewable for substantial evidence. (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480.) In *Oliver*, the reviewing court concluded there was substantial evidence to support the finding of reckless indifference to human life but recognized that knowing participation in an armed robbery is not sufficient, on its own, to demonstrate reckless indifference. (*Id*., at p. 483.)

Brock complains that the trial court placed too much reliance on a distinguishable decision, where the defendant in *Oliver* was 23 years old at the time of the crime. However, the court in *Oliver* considered youth-related factors in reaching its conclusion,

19

recognizing that "[r]esearch has shown that the prefrontal cortex doesn't have nearly the functional capacity at age 18 as it does at 25." (*Oliver*, *supra*, 90 Cal.App.5th at p. 486.) There the court found that the evidence supported the inference that *Oliver* was aware that the shooter likely intended to use a firearm during the robbery/burglary to kill the victim and did nothing to minimize this grave risk of death. (*Id.*, at p. 483, referring to *People v. Clark* (2016) 63 Cal.4th 522, 621 ["A defendant's willingness to engage in an armed robbery with individuals known to him to use lethal force may give rise to the inference that the defendant disregarded a 'grave risk of death'"].)

The reviewing court in *Oliver* recognized that the totality of the circumstances attendant to a finding that a defendant was a major participant who acted with reckless indifference to human life necessarily includes consideration of the defendant's youthful age. (*Oliver*, *supra*, 90 Cal.App.5th at p. 488.) It concluded that, even if the trial court was required to expressly consider *Oliver's* youth, any such error was harmless under the specific circumstances of the case. (*Id.*, at p. 489.) In other words, youth is but a factor to be considered in addition to the other factors relating to a defendant's major participation and reckless indifference to life. (*Id.*, at pp. 488–489.)

Brock criticizes the trial court's reliance on this case because the defendant in *Oliver* was 23 at the time of the crimes. This is true, insofar as the reviewing court in *Oliver* was cognizant the presumption of immaturity weakens as a defendant approaches 26. (*Oliver*, *supra*, 90 Cal.App.5th at p. 489.) However, the reviewing court considered whether *Oliver's* behavior was motivated by factors that distinguish youthful offenders from more mature offenders, that is, (1) their relative impulsivity; and (2) their

20

vulnerability to peer pressure (*ibid.*) in determining if the trial court's failure to consider *Oliver's* youth was prejudicial. The court then proceeded to conclude that *Oliver's* participation in the planning and execution of the crimes was not motivated by either impulsivity or peer pressure. (*Ibid.*) This, in fact, was a consideration of youth-related factors.

Here, the trial court reviewed the report of Dr. Graham-Howard, in which Brock's youth-related factors were considered. That is all that is required by law. The trial court was required to make its own factual determinations of whether Brock's youth precluded a finding that he acted with reckless indifference to human life, and we are precluded from substituting our judgment for that of the trial court where there is substantial evidence in the record to support the court's findings.

Because the trial court's finding was supported by substantial evidence, reversal is not required.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.

MILLER
J.